UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD JORDAN,<br>    *Plaintiff*,<br><br>    *v.*<br><br>TOWN OF WINDSOR, ET AL.<br>    *Defendants*. | No. 3:17-cv-427 (MPS) |

**RULING ON MOTION TO DISMISS**

On March 14, 2015, Edward Jordan and two officers of the Windsor Police Department had an altercation. Jordan alleges that the officers detained him without probable cause, physically restrained him, and injured him. He alleges that this misconduct violated his rights under the federal and Connecticut constitutions. He also alleges that this incident resulted from the Town of Windsor's failure to train its officers. He has sued the two officers, the Chief and a captain of the Windsor Police Department, and the Town of Windsor. The defendants have moved to dismiss several counts of the Amended Complaint. For the reasons that follow, their motion is GRANTED in part and DENIED in part.

### I.     Factual Allegations

In Jordan's amended complaint (ECF No. 17), he makes the following allegations. Defendant Kearse was the chief of the Windsor Police Department, and defendant Lappore was "the captain" of the Windsor Police Department. (*Id.* at ¶¶ 2–3.) They were responsible for the supervision and training of the members of the Windsor Police Department. (*Id.*) Jordan alleges that "at all times relevant hereto[,] there was a policy within the Windsor Police of having [p]atrol officers on duty at all times and having such officers armed at all times with weapons including firearms and/or tasers." (*Id.* at ¶ 4.) He further alleges that "there was an obvious need to train

1

officers in the proper use and handling of firearms" and that there was also "an obvious need to train officers in proper use of force, including de-escalation of force, confronting members of the public, including suspects[,] and keeping the firearms and weapons of the officer secure." (*Id.* at ¶¶ 5–6.)

Jordan also alleges that defendants Sanchez and Taylor were patrol officers of the Windsor Police Department. (ECF No. 17 at ¶¶ 7–8.) On March 14, 2015, Jordan was "lawfully in the area of Deerfield Package Store, 264 Deerfield Road, Windsor, Connecticut." (*Id.* at ¶ 9.) He alleges that, at that time, he was "verbally confronted by" Sanchez and Taylor. (*Id.*) "During the aforementioned confrontation, the Plaintiff discontinued his conversation with [Sanchez and Taylor] and began calmly and slowly walking away from defendants." (*Id.* at ¶ 10.) Jordan alleges that Sanchez "began . . . shouting at plaintiff, despite plaintiff's clear expressed intention to leave the presence of defendant, and no probable cause [sic] to arrest or detain Plaintiff." (*Id.* at 11.) Jordan states that at no time during this conversation did the officers tell him that he was under arrest. (*Id.* at ¶¶ 11–12.) He alleges that the "shouting and verbal demands were upsetting, threatening[,] and constituted verbally provoking [sic] to Plaintiff." (*Id.* at ¶ 14.) He alleges that a physical altercation ensued: Sanchez "pushed [him] to the ground and punched [him] in the face" and "twist[ed] [his] limbs, press[ed] on [him] forcefully with [Sanchez's] knees and other extremities"; and Taylor "aimed and pointed her taser weapon at" Jordan when "it was unsafe to do so and in an unsafe manner," which "created a risk that others might be harmed by the taser weapon." (*Id.* at ¶¶ 17–20.)

Jordan alleges that he suffered the following injuries: (1) "injuries [sic] head, face, jaw[,] and neck"; (2) "swelling, bruising[,] and visual impairment in both eyes"; (3) "swollen and bruised lips"; (4) "swollen and bruised right hand"; (5) "numbness and nerve damage to the upper torso

and head area"; (6) "related surgeries and treatments to the head"; (7) "traumatic brain injury"; (8) "depression"; (9) "anxiety and panic attacks"; and (10) "injuries to the contiguous muscles, ligaments, nerves, soft tissues, glands, bones[,] and joints of the injured parts [sic]." (ECF No. 17 at 6–8.) He also alleges that he incurred medical expenses, suffered diminished ability to participate in the activities of everyday life, and lost earning capacity. (*Id.*)

The defendants have moved to dismiss several of Jordan's claims under Rule 12(b)(6). (ECF No. 20.) They have moved to dismiss Jordan's *Monell* claims, his claims under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 7, 8, and 9 of the Connecticut Constitution, his claims for negligence against Kearse and Lappore, and his false imprisonment claim. (*Id.*)

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under *Twombly*, the Court accepts as true all of the complaint's factual allegations—but not conclusory allegations—when evaluating a motion to dismiss. *Twombly*, 550 U.S. at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp.2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips

away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, No. 09-cv-1412 (JFK), 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

**III.  Analysis**

   A. *Monell* and Supervisory Liability Claims

The defendants have moved to dismiss Count One of Jordan's Amended Complaint, which is brought against the Town of Windsor, because he has not sufficiently alleged that an unconstitutional policy or custom caused his injuries. They have moved to dismiss Count Two, which names Chief Kearse and Captain Lappore, because there are insufficient allegations that those two defendants were personally involved in the March 14, 2015 incident. (ECF No. 20-1 at 8–12.)

A municipality is liable under Section 1983 only if it had a "policy or custom" that caused the plaintiff's injury. *Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978); *see also Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) ("To hold a city liable under Section 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." (internal quotation marks and citations omitted)). Courts have recognized that "[a] plaintiff may satisfy the policy or custom prong in one of four ways: by alleging the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and

4

widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Aquino v. City of N.Y.*, No. 1:16-cv-1577, 2017 WL 384354, at *3 (S.D.N.Y. Jan. 25, 2017) (internal quotation marks and citation omitted); *see also Albert v. City of Hartford*, 529 F. Supp. 2d 311, 329 (D. Conn. 2007).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For municipal liability to attach on a failure to train theory, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (internal quotation marks and citation omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal quotation marks and citation omitted). "While it may be true that Section 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." *Simms v. City of New York*, 480 F. App'x 627, 631 n. 4 (2d Cir. 2012).

To allege deliberate indifference for a failure to train claim, a plaintiff must plead facts giving rise to a plausible inference (1) "that a policymaker knows to a moral certainty that h[is] employees will confront a given situation"; (2) "the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*,

974 F.2d 293, 297–98 (2d Cir. 1992). Courts in this circuit have required plaintiffs to allege facts suggesting that a specific defect in a municipality's police officer training regimen caused the plaintiff's injuries. *See Gomez v. City of Norwalk*, 2017 WL 3033322, at *5 (D. Conn. July 17, 2017) (citing cases).

A plaintiff can prove that a supervisory defendant is liable for a constitutional violation where the supervisor had "personal involvement . . . in alleged constitutional deprivations." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). "In the Second Circuit, such personal involvement may be shown by evidence that

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring."

*Ziemba v. Lajoie*, No. 3:11-cv-00845 (JAM), 2016 WL 5395265, at *7 (D. Conn. Sept. 26, 2016) (internal quotation marks omitted) (quoting *Colon*, 58 F.3d at 873).

Jordan argues, by merely restating the allegations in his complaint, that he "has sufficiently alleged that that [sic] in light of the duties assigned to specific officers, the need for adequate training is so obvious[] that the city and policymakers are liable for their failure to provide proper training where, as here, it actually caused injury." (ECF No. 27 at 2–3.) That is unpersuasive.

First, he alleges no facts suggesting there was a formal policy or any decision or action by a final policymaker that caused the alleged violation of his constitutional rights. Second, he alleges no widespread or consistent practice that arises to a custom or usage. Third, although apparently invoking failure to train liability, Jordan has not alleged plausibly that Lappore, Kearse, or the Town were "deliberate[ly] indifferen[t] to the rights of persons with whom the [untrained

employees] come into contact" by failing to train employees. *Connick*, 563 U.S. at 61. Aside from stating that there was "an obvious need" for training, Jordan does not make *any factual allegations* about the Town's use of force training program or about how it was inadequate: he does not even allege whether or not the Town had a use of force training program. (*See* ECF No. 17.) And he certainly has not alleged any pattern of actions or even other incidents by untrained employees that might have put Lappore, Kearse, or the Town on notice that there was a defect in the Town's training of officers: he pleads facts only concerning the March 14, 2015 incident in the complaint. (*See* ECF No. 17.) Therefore, while Jordan is not "expected to know the details of [the Town's] training programs prior to discovery," his claim for *Monell* liability does not meet the facial plausibility standard of *Iqbal*. *Simms*, 480 F.App'x at 631 n. 4; *see also Connick*, 563 U.S. at 61. He also has failed to state any non-conclusory allegations that Kearse or Lappore had any personal involvement in the alleged violation of his constitutional rights: he alleges no facts suggesting they were present during the March 14, 2015 incident or even that they were subsequently made aware of it. Nor does he allege they created a policy that caused the incident or that other, similar incidents—involving Sanchez and Taylor or any other officers—were brought to their attention. I therefore GRANT the defendants' motion to dismiss Counts One and Two of the Amended Complaint.

    B.  <u>Third Count</u>

The defendants also have moved to dismiss Count Three of the Amended Complaint, insofar as it alleges violation of Jordan's rights under the "Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution" and "Article 1, §§7, 8[,] and 9 of the Constitution of Connecticut." (ECF No. 17 at ¶ 38.) In opposition, Jordan argues only that "[a]s the Fourth Amendment to the United States Constitution is clearly implicated by the conduct of the

Defendants [as alleged in the complaint] . . . . the Defendants' argument that some of the other particular Amendments invoked are factually inapplicable is frivolous." (ECF No. 27 at 4.) Without more, Jordan appears to waive any allegations that the defendants violated any federal and state constitutional provision other than the Fourth Amendment, but I also find that the Amended Complaint fails to state a claim under any of these other provisions.

Jordan's factual allegations state a claim only under the Fourth Amendment to the U.S. Constitution. The Fifth Amendment states that no one "shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property without due process of law[.]" U.S. Const., amend. V. The Sixth Amendment guarantees the rights of a criminal defendant to a speedy trial, an impartial jury, to confront witnesses, to be informed of charges, to obtain witnesses in his favor, and to be represented by counsel. U.S. Const., amend. VI. And the Eighth Amendment prohibits cruel and unusual punishment and "is addressed exclusively to the treatment of persons incarcerated in penal institutions." *Bancroft v. City of Mt. Vernon*, 672 F. Supp.2d 391, 391 (S.D.N.Y. 2009) (citing *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)). Jordan's allegations concern only his interaction with two police officers *before* he was arrested. (*See* ECF No. 27 at 4–5.) Therefore, his allegations fail to state a claim under any of these federal constitutional provisions, aside from the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 397 (1989).

As for the Connecticut constitutional claims, Connecticut courts "have rejected a private cause of action under article first, [Section] 8 of the Connecticut constitution." *Fago v. Devin*, No. HHD-CV-146053659S, 2015 WL 5135940, at *3 (Conn. Super. Ct. July 31, 2015) (citing *ATC Partnership v. Windham*, 251 Conn. 597, 612–17 (1999) (collecting cases). Therefore, the defendants' motion to dismiss Jordan's claim under Section 8 is GRANTED.

Connecticut courts do recognize a private cause of action under article first, Sections 7 and 9 of the Connecticut constitution, but only where the misconduct alleged is "egregious." *Bauer v. City of Hartford*, No. 3:07-CV-1375 PCD, 2010 WL 4429697, at *12 (D. Conn. Oct. 29, 2010) (citing *Binette v. Sabo*, 244 Conn. 23, 50 n. 23 (1998)). Connecticut courts examine whether the alleged misconduct supports a cause of action on a "case-by-case" basis. *Outlaw v. City of Hartford*, No. 3:07-cv-01769 (GWC), 2015 WL 1538230, at *13 (D. Conn. Apr. 6, 2015). For example, in *Binette*, the court held that the defendants' conduct was egregious where the plaintiff alleged that one of the defendants "repeatedly slammed [the plaintiff's] head against a car" and that another defendant "struck [the plaintiff] on the head and kicked him while he was lying on the ground experiencing an epileptic seizure." *Binette*, 244 Conn. at 26. And, in *Outlaw*—where "[t]he physical confrontation [between the plaintiff and the defendant officers] was at least as violent as that suffered by the plaintiffs in *Binette*[] and resulted in serious injury to plaintiff" and where "[t]here was no warrant involved, any crime being committed by plaintiff was minor, and plaintiff maintains that he did not attempt to flee or resist arrest"—the court found that "[a] jury could find that the circumstances of the arrest were so unreasonable that they violated the guarantees of §§ 7 and 9." *Outlaw*, 2015 WL 1538230, at *14. Conversely, when an officer struck a plaintiff "in the shoulder with his baton to get [the plaintiff] to comply with [his] commands" while the plaintiff was resisting arrest, there was no cause of action under Section 9. *Faulks v. City Of Hartford*, No. 308-cv-270 (VLB), 2010 WL 259076, at *3, *9–10 (D. Conn. Jan. 19, 2010).

Here, more factual development is necessary before I can determine whether Jordan can establish a violation of article first, Sections 7 and 9. Jordan has alleged that Sanchez "pushed the plaintiff to the ground and punched the plaintiff in the face with his closed fist while the [p]laintiff was on the ground" and that Sanchez also "engaged in additional physical contact with the plaintiff,

9

including twisting plaintiff's limbs, pressing on plaintiff forcefully with his knees and other extremities." (ECF No. 17 at ¶¶ 17–18.) He has also alleged that he suffered serious injuries, including "traumatic brain injury." (ECF No. 17 at ¶ 24.) Drawing all inferences in Jordan's favor, I find that these allegations could state conduct as egregious as that described in *Binette* or *Outlaw*. 244 Conn. at 26; *Outlaw*, 2015 WL 1538230, at *14. Therefore, I will not dismiss Jordan's claims under article first, Sections 7 and 9 of the Connecticut constitution.

I GRANT the defendants' motion to dismiss Count Three, insofar as it alleges violation of any federal constitutional provisions other than the Fourth Amendment to the U.S. Constitution and insofar as it alleges a violation of article first, Section 8 of the Connecticut constitution. Count Three remains as to Jordan's Fourth Amendment claim and his claim under article first, Sections 7 and 9, of the Connecticut constitution.

C. Governmental Immunity

The defendants also have moved to dismiss Count Five because it is barred by governmental immunity. (*See* ECF No. 20-1 at 16–19.) In Count Five, Jordan alleges "negligence . . . as to the Defendants Kelvan Kearse and Thomas Lap[p]ore." (ECF No. 17 at 14.) He alleges that these defendants "failed to properly instruct" Sanchez and Taylor on several issues. (*Id.* at ¶ 43.) In Connecticut, government employees are immune from suit for "negligent acts which require the exercise of judgment or discretion." Conn. Gen. Stat. § 52-557n(a)(2)(B). "[T]he great weight of authority [establishes] that the operation of a police department is a discretionary governmental function." *Gordon v. Bridgeport Hous. Auth.*, 208 Conn. 161, 179 (1988). That means that "[t]he act of training and supervising police officers is [also] clearly a discretionary governmental function. Considerations of who to hire, how to train such people, and how to supervise police officers on the job are decisions requiring the use of judgment and discretion."

*Cook v. City of Hartford*, No. CV 89-0362482, 1992 WL 220102, at *2 (Conn. Super. Ct. Aug. 31, 1992) (citing *Gordon*, 208 Conn. at 179)). There are three exceptions to governmental immunity, namely when: (1) the alleged conduct involves malice, wantonness, or intent to injure; (2) a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and (3) circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. *Evon v. Andrews*, 211 Conn. 501, 505 (1989).

The only one of these exceptions that Jordan addresses is malice, but he does not argue that he has alleged any intentional conduct by Kearse and Lappore. Instead, he claims that "[t]he Amended Complaint alleges that the Defendants Sanchez and Taylor harassed and provoked Plaintiff with intention to create apprehension on the part of the Plaintiff . . . . The paragraphs of Count Three implicating purposeful, malicious conduct [by Sanchez and Taylor] are incorporated into Count Five, by reference." (ECF No. 27 at 4.) He continues that "[s]ince the element of malice on the part of the Defendants has been properly alleged, there is no governmental immunity and their training/supervising officers are potentially liable for their role in said malice." (*Id.*) That argument is unavailing. The fact that Jordan has alleged purposeful behavior on the part of other defendants is insufficient to bring the claim against Kearse and Lappore within the malice exception. And, because Jordan has not argued that any other exception applies, I GRANT the defendants' motion to dismiss Count Five of the Amended Complaint.

D. False Imprisonment

The defendants have moved to dismiss Count Six, alleging false imprisonment by Sanchez and Taylor, because the defendant pled no contest to charges of disorderly conduct and interfering with officers that they argue resulted from this incident. (ECF No. 20-1 at 19–21.) They ask me to

11

take judicial notice of the fact that Jordan pled no contest to two charges with an arrest and offense date of March 14, 2015. (*Id.* at 20–21; ECF No. 20-2.)

In Connecticut, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green v. Donroe*, 186 Conn. 265, 267 (1982). "Any period of such restraint, however brief in duration, is sufficient to constitute a basis for liability." *Id.* A lack of a "formal arrest" and the fact that the plaintiff was detained "for only ten minutes" "would not necessarily defeat" a plaintiff's cause of action for false imprisonment. *Id.* But "[a] person is not liable for false imprisonment unless his [or her] act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." *Id.* at 268.

"[T]he Second Circuit has held that favorable termination is [also] an element of false arrest under Connecticut law." *Ruttkamp v. De Los Reyes*, No. 3:10-cv-392 (SRU), 2012 WL 3596064, at *12 (D. Conn. Aug. 20, 2012) (citing *Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) ("[F]avorable termination is an element of a Section 1983 claim sounding in false imprisonment or false arrest.") (internal quotations omitted)); *see also Clewley v. Brown, Thomson, Inc.* 120 Conn. 440, 440 (1935) ("The same reasoning which makes conviction a defense in an action for malicious prosecution would apply as strongly to such a cause of action for false imprisonment as is here asserted, and if conviction is a defense in one, so it should be in the other."). A plea of no contest along with a finding of guilt by the court prevents the plaintiff from meeting the favorable termination requirement of a false imprisonment claim. *See Brown v. Catania*, No. 3:06-cv-73 (PCD), 2007 WL 879081, at *5 (D. Conn. Mar. 21, 2007).

Rule 201 of the Federal Rules of Evidence allows courts to take judicial notice of: (1) a fact that "is generally known within the trial court's territorial jurisdiction"; or (2) a fact that "can

be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 227 (2d Cir.2012); *see also Spiteri v. Russo*, No. 12-cv-2780 (MKB) (RLM), 2013 WL 4806960, at *65 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015). "[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.1991); *see also Spiteri v. Russo*, 2013 WL 4806960, at *65.

Jordan argues that "the [d]efendants' [sic] misapprehend completely the conduct that is the subject of the Plaintiff's Count alleging false imprisonment. The Defendants are arguing facts outside the bounds of the Complaint to make the case that, because the Defendants ultimately arrested the Plaintiff, the disposition of the arrest is dispositive on [sic] his claim." (ECF No. 27 at 4–5.) He further asserts that "[t]his misses the mark, because the Plaintiff is alleging that the wrongful conduct on the part of the Defendants occurred *prior to* the so-called arrest." (*Id.* at 5.) "The Defendants['] wrongful conduct was when they intentionally put the Plaintiff in fear and apprehension for his safety and refused to allow him to leave, before they initiated physical contact with him and prior to any expressed indication that they intended any arrest." (*Id.*)

At this stage, without more factual development, I cannot determine whether Jordan's no contest pleas were a result of the incident that Jordan describes in his complaint. I may take judicial notice of the fact that Jordan entered no contest pleas to charges of interfering with an officer and disorderly conduct and that those charges had an arrest and offense date of March 14, 2015. (ECF No. 20-2 at 2); *see Kramer*, 937 F.2d at 774. But taking notice of those facts does not allow me to conclude that that arrest and subsequent pleas were based on the conduct alleged in the complaint.

Although Jordan admits that it was Sanchez and Taylor who arrested him that day (*see* ECF No. 27 at 5), he argues that these defendants wrongfully detained him before they arrested him for interference and disorderly conduct. (*Id.* at 4–5.) He does not include any factual allegations regarding his arrest in the complaint. (*See* ECF No. 17.) Drawing all inferences in Jordan's favor, I cannot conclude at this stage that the no contest pleas were unfavorable terminations of charges resulting from the incident described in Jordan's complaint. Taking judicial notice of the pleas entered in the Connecticut Superior Court does not establish that the charges resulted from the incident in the complaint, even though the offense date is the same as the date alleged in the complaint. Instead, further factual development is needed as to the relationship between those charges and Jordan's false imprisonment allegations.

Therefore, I DENY the defendants' motion to dismiss Count Five of the Amended Complaint.

## IV. Conclusion

The Motion to File an Amended Complaint (ECF No. 17) is GRANTED. For the reasons stated above, the defendants' motion to dismiss the first and second counts of the Amended Complaint is GRANTED, their motion to dismiss the third count, insofar as it states a claim for violation of the plaintiff's rights—other than under the Fourth Amendment and article first, Sections 7 and 9 of the Connecticut Constitution—is GRANTED, their motion to dismiss the Fifth Count as barred by governmental immunity is GRANTED, and their motion to dismiss the false imprisonment claim is DENIED. (ECF No. 20.)

    It is SO ORDERED.

                                      /s/
                                    Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
              March 8, 2018